The first item objected to, as not a proper charge in full, upon the fund in the hands of the plaintiffs, considering them in the order in which they were presented by counsel at the argument, is the item of $781.75, being the amount of sundry premiums paid for insuring the mortgaged premises. The plaintiffs became the owners of the mortgage, by assignment, on the second day of July, 1858. On the first day of July, 1861, the mortgagors, Seagrave Steere, effected the insurance in question, for the usual term of one year, the amount of the policies payable, in case of loss, to the plaintiffs. Instead of paying these premiums, Seagrave Steere gave their memorandum checks for the amounts. Soon afterwards, and in the same month, Seagrave Steere failed, leaving these checks outstanding and unpaid. One of the insurance companies then gave notice to the plaintiffs, that unless the premiums due to them were paid they should vacate the policy. The plaintiffs, accordingly, on the twenty-third day of the same July, paid the amount *Page 65 
of the several premiums. After the failure of Seagrave Steere, the plaintiffs took possession of the mortgaged property, and in the month of September following, sold the same under the power contained in the mortgage. The mortgagors, Seagrave Steere, agreed to keep the mortgaged premises insured; and in case of not doing so, that the mortgagees might effect insurance thereon at the expense of the mortgagors. The effect of the sale of the mortgaged premises was, to vacate the existing policies, without some new agreement on the part of the insurers, which, it is understood, they declined to make.
It is objected by Steere, surviving partner of Seagrave 
Steere, and by his assignee, that they had no notice of this payment by the plaintiffs. If they did not know, it was their own fault. They, or Seagrave Steere, certainly knew their own checks, given for these premiums, were outstanding and unpaid. The plaintiffs did no more than perform in good faith, a contract they — Seagrave Steere — had entered into, relating to the mortgaged property, and for the benefit of the mortgagors as well as of the mortgagees. If the mortgagors would derive any advantage from a partial return of premium, it was their business to endeavor to secure it. It does not appear that they did anything. It was due to the insurers that the contract should be executed as made. Besides, in July, 1861, the mortgagees could not tell when the property would be sold. It might remain upon their hands until the policies would expire. The condition of manufacturing industry, at the time, did not favor an early sale. Nor had the mortgagees any interest to charge upon the estate any unnecessary expense. Looking at the transaction, after the event, and we see how a part of the premium money might have been saved; but viewing it as it stood, in July, 1861, immediately after the failure of Seagrave Steere, and neither they, nor those claiming through them, can properly object to charging upon the property an expense they incurred, in good faith, for its protection, and which the plaintiffs, in like good faith, paid and discharged. This item therefore, with the interest, is allowed.
The bill of A.H. Fiske, of $100, and the first item in the bill *Page 66 
of R.W. Greene, of $200, for professional services connected with the sale and transfer of the mortgaged premises, are admitted asjust allowances, properly chargeable against the fund in the hands of the plaintiffs.
One of the purposes — if not the main purpose — of the bill, filed by the plaintiffs in this case, was to have the mortgaged property and its proceeds declared to be the individual property of Josiah Seagrave, and the surplus of the proceeds applied to the payment of his individual note of $2,000, held by the plaintiffs. After stating how the fund arose, and what specific liens exist against it, the bill proceeds at once to allege that the mill, its appurtenances, c., were the property of Seagrave, and not of the firm of Seagrave Steere; and that, being such, they (the plaintiffs), after the payment of the specific liens, are entitled to deduct from the surplus the amount of his individual note aforesaid, due to them, treating as the fund to be distributed, under the decree of the court, only what moneys may then remain in their hands. The several answers of Jacob T. Seagrave, the administrator of Josiah Seagrave, and of Phebe H.B. Seagrave, his widow, while admitting the validity of the plaintiffs' mortgage, and that of Phetteplace Seagrave, and assenting to their payment out of the proceeds of the sale of the property, do not claim that the same was the individual property of Josiah, and deny any right in the plaintiffs, to apply any part of the fund to the payment of Josiah's individual note. The answers of the surviving partner — Steere — and of his assignee, also admit the validity of both of the mortgages referred to, but affirm that the property was, from the first, copartnership and not individual property, and that no part of its proceeds should be applied to the payment of the $2,000 note. The substantial issue before the court, upon the hearing of the bill, was that raised by the plaintiffs for their own benefit, and in support of which they adduced no sufficient or satisfactory proof. The bill, therefore, was not a bill of interpleader, or a bill in the nature of a bill of interpleader; nor were the plaintiffs pure trustees, but simply prior mortgagees, holding a surplus arising from the sale of the mortgaged property, after the payment of their own lien. We *Page 67 
see no equity in charging upon this fund, and, through it, upon the unsecured creditors of an insolvent firm, the expenses of trying an issue the plaintiffs raised for their own benefit, and which they failed to maintain by proof especially in view of the fact that by the terms of the mortgage and of the agreement collateral thereto, which we shall hereafter refer to, the plaintiffs were amply compensated, by a liberal commission, for all the risk they incurred, and for all the service they rendered. The remaining items, amounting to $545, in the bill of Richard W. Greene, are therefore disallowed as a charge upon the fund.
The next item in dispute is the charge of $2,812.50, the same being the amount of a commission of five per cent. upon the gross proceeds of the sale of the mortgaged property. The agreement, collateral to the mortgage, and under which the original liability of the mortgagees was incurred, contains this stipulation, — that "out of the money arising from" the sale of the mortgaged property, the mortgagees " are to retain the amount due to them, whether payable then or maturing and falling due afterwards. Also, five per cent. commission on the grossproceeds of" such sale, with the costs and charges of advertising and selling the premises, c. It appears by this collateral agreement, that Seagrave Steere, manufacturers, applied to J.C. Howe Co., merchants, for a loan of credit, to enable them to conduct their business with greater facility. J.C. Howe Co., were to loan their credit to Seagrave Steere in the form of acceptances, to an amount not exceeding, at any one time, forty thousand dollars, and for the period of five years. For this loan of credit, Seagrave Steere were to pay a commission of two and one-half per cent. They were also to place Howe Co. in funds to meet these acceptances, at least one day before they matured. In case they fail to do this, and Howe Co. are obliged to protect the acceptances, and resort to a sale of the mortgaged estate, then J.C. Howe Co. were to have additional compensation, by way of this stipulated five per cent. commission. J.C. Howe Co., under this agreement, were liable, at one day's notice, to pay large sums of money for Seagrave 
Steere. Months might elapse before they were reimbursed. This would incommode men of large *Page 68 
means. The mortgagees intended to be compensated for this inconvenience and risk, and the mortgagors agreed to compensate them in this manner. The language of the agreement is explicit. Considering the nature of the business in which Seagrave Steere were then engaged, the advantage to them of having an undoubted credit, the responsibility which the creditors incurred in advancing their credit to so large an amount, and for so long a time, involving a liability on their part, to protect these acceptances upon one day's notice of inability, on the part of Seagrave Steere, to protect them; and we see nothing so unconscionable in the stipulation, that equity should interpose and relieve against it.
On the fifteenth and sixteenth days of October, 1861, the plaintiffs received from the sale of the mortgaged estate the sum of $56,335.60, and, at the same time, applied $25,250 of the same to the payment of the principal and interest due upon their mortgage, leaving a large surplus in their hands; and, on the fifty-ninth day of the September term, 1861, (which was the twenty-sixth day of December, 1861), by their bill, asked the direction of this court in distributing this surplus. On the seventh day of May, 1862, under an interlocutory decree entered in the cause, the plaintiffs paid over to Phetteplace Seagrave, the holders of the second mortgage, a further sum of $23,979.68, adjudged to be due thereupon.
The defendant, Thomas C. Greene, assignee of the surviving partner of Seagrave Steere, claims, that the plaintiffs should be charged with interest upon the sums or balances, from time to time, in their hands, after the payment of the first mortgage. The plaintiffs were prior mortgagees, holding in trust a surplus to which there were various claimants. They seasonably sought, in the proper mode, instructions for its distribution. Their cashier, whose statements are admitted in proof, says that the plaintiffs were ready, at any time, and without previous notice, to pay over the whole sum due upon the second mortgage, whenever ordered by the court, and that a sufficient amount was held in reserve for that purpose. A trustee, who is guilty of no breach of trust, and who does not unreasonably neglect to invest, *Page 69 
or delay in applying the funds to the purposes of the trust, is not chargeable with interest. When he mingles the trust funds with his own, and uses them in business for purposes of gain, then he may be charged with interest, as an equivalent for the profits presumed to be acquired. Here the plaintiffs held in reserve, in the nature of a special deposit, a sum sufficient to pay the Phetteplace Seagrave mortgage, and as to that amount are not liable for interest.
After deducting the stipulated commission of five per cent. to which they are entitled, the sums paid by them for insurance and interest, and the several bills incurred in the sale and conveyance of the mortgaged property, the remaining surplus the plaintiffs mingled with their own funds, and used in their business. They further claimed the right to appropriate the same, or a part of it, to the payment of the individual note of Josiah T. Seagrave. They have retained and had the use of this sum for two years and six months and upwards. Under these circumstances they should be charged with interest upon it, at the rate of six per cent. per annum, from the time of its receipt.
The items, Nos. 1 to 10 inclusive, in the agreed statement of facts, claimed by the plaintiffs, are allowed as claimed.
The first charge of item No. 11, being $200, is also allowed; the remaining charges under item No. 11 are disallowed.
Let the account be so stated.